UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

SIG SAUER, INC.

          *Plaintiff,*

v.

JEFFREY S. BAGNELL, ESQ., LLC, and
JEFFREY S. BAGNELL,

          *Defendants.*

Civil Action No.: 1:22-cv-78

# MEMORNANDUM OF LAW IN SUPPORT OF PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION

Defendants are making demonstrably false and misleading statements concerning SIG Sauer, Inc.'s ("SIG") iconic P320 handgun in a video animation (the "Animation"), including by misrepresenting and visually distorting components of the pistol and making assertions about the mechanics of the P320 that are physically impossible. The Animation currently appears, among other locations, on the website of defendant Jeffrey S. Bagnell, Esq., LLC (the "Bagnell Firm") and on the YouTube channel of defendant Jeffrey S. Bagnell ("Bagnell"). Bagnell, or someone on his behalf, is deleting YouTube comments from viewers that question the accuracy of the Animation—thus ensuring that the public will continue to be misled. The Court should issue an order requiring defendants to take down the Animation.

## FACTS

SIG manufactures and supplies high-quality firearms to law enforcement, the U.S military, and civilian customers. Affidavit of Sean Toner ("Toner Aff.") at ¶ 2. SIG is one of New Hampshire's largest employers and maintains its principal place of business here, where it manufactures firearms and operates an academy to train customers in the safe use of its products.

1

*Id*.  SIG is a trusted partner of the U.S. military and a wide variety of law enforcement organizations.  *Id.* at ¶ 2.  The P320 is a striker-fired handgun first produced in 2014 and which, since that time, has been sold to a variety of customers.  *Id.* at ¶ 3.  Indeed, the U.S. Army has adopted a version of SIG Sauer's P320 as its primary sidearm.  *Id.* Pulling the trigger of a P320 pistol sets in motion a series of interconnected mechanical steps that disengages the multiple internal safeties and ultimately causes the striker to spring forward and fire a chambered round.  *Id.* at ¶¶ 4-7 (describing the series of mechanical steps and the components involved).

Bagnell is a lawyer and principal of the Bagnell Firm.  Compl. at ¶ 5.  The Bagnell Firm maintains a website at www.bagnell-law.com, on which Bagnell links to press releases and articles regarding his firearms-related personal injury litigation, posts client reviews, and invites clients to contact him about his services.  *Id.* at ¶ 7; Affidavit of Stephen K. Garvey ("Garvey Aff.") at ¶¶ 2, 6.  The Amination appears on the Bagnell Firm's website on a dedicated page that a consumer can reach by clicking the "P320 animation" link on the website's main menu.[1]  Compl. at ¶ 15; Garvey Aff. at ¶ 2.  The Animation appears at the top of the page, below a banner containing descriptions of media appearances by Bagnell and press coverage of Bagnell and the Bagnell Firm.  Compl. at ¶ 15; Garvey Aff. at ¶¶ 2, 6.  The website also contains a link to view the Animation on YouTube, where consumers can leave and respond to comments, and where Bagnell asserts a 2021 copyright in the Animation.  Compl. at ¶ 15; Garvey Aff. at ¶ 2.

The Animation also appears on Bagnell's YouTube page, where it was posted on or about August 28, 2021 and where Bagnell also asserts a 2021 copyright.  Compl. at ¶ 16; Garvey Aff. at ¶ 3.  According to the view count maintained by YouTube, the Amination has been viewed on Bagnell's YouTube page over 36,000 times.  Compl. at ¶ 16; Garvey Aff. at ¶ 3.

---

[1] *See* https://www.bagnell-law.com/p320-animation

The opening frames of the Animation contain a prominent written message stating that SIG's P320 has a "mechanism of failure." *See* Garvey Aff. at Ex. 7 (Animation). The Animation then shows images it represents are "based on" a CT scan of a P320. *Id.* at 0:07.[2] This conveys the message that what follows is a real SIG P320—a message that is false. The Animation then morphs into fully animated images purporting to demonstrate the alleged mechanism of failure in action. *Id.* at 0:11. According to the Animation, "[n]ormal operation requires [a] trigger pull to discharge the firearm," *Id.* at 2:07, but it is possible to have a "defective discharge" with "no trigger pull." *Id.* at 2:28. To support this false narrative, the Animation shows what purport to be images of internal components of the P320. In reality, though, the images on which the Animation's claims are based are misrepresentations, and the claims themselves are false.

SIG retained Robert "Buzz" Miller, an expert with more than fifteen years of experience in handgun design and manufacturing, to compare the representations in the Animation to an actual P320 firearm. *See* Affidavit of Robert Miller ("Miller Aff.") at ¶¶ 3-6. Miller found many misrepresentations, distortions or omissions about components of the P320. *Id.* at ¶¶ 13-47. In addition, Miller observed multiple indications that certain images in the Animation were intentionally manipulated or distorted, *e.g.,* to make surfaces look rounded or deformed rather than smooth and straight, to change the dimensions of components and falsely depict increased space between them, and to have solid parts merge into each other and occupy the same space (a physical impossibility). *Id., e.g.,* at ¶¶ 15, 22, 29, 30, 36, 37.

---

[2] For purposes of citing to the Animation, SIG has included a timestamp reference (minutes:seconds) to identify where in the Animation a particular claim is made.

As described in more detail below and in the Miller Affidavit at ¶¶ 13-47, the misrepresentations in the Animation, conveyed in images and text, include:

- Falsely depicting the face of the sear notch as deformed (*Id*. at ¶¶ 14-20)

- Falsely depicting the face of the striker foot as deformed (*Id*. at ¶¶ 21-23)

- Falsely depicting the proportions of the striker foot and the degree of engagement between the striker and sear (*Id*. at ¶¶ 24-25)

- Falsely depicting "excessive" space between the striker and its housing, including by manipulating images to make parts appear thinner (and gaps wider) than they are (*Id*. at ¶¶ 26-32)

- Falsely depicting the striker foot as "walking off" the sear vertically, including by manipulating components in the Animation in ways that are physically impossible (*Id*. at ¶¶ 33-37)

- Falsely depicting the physical geometry of the striker safety lock to make it appear loose fitting (*Id*. at ¶¶ 38-40)

- Falsely depicting the physical geometry of the firearm's striker safety notch, including by changing its size and shape (*Id*. at ¶¶ 41-44)

- Falsely claiming that the striker safety notch and striker safety lock can "ride over" each other (*Id*. at ¶¶ 38-44)

- Falsely presenting the P320 as having a single notch sear, when the P320 has used a two-notch sear since 2017 (*Id*. at ¶ 13)

- Omitting the mechanical disconnector present on the P320 since 2017, as well as other components and safety features (*Id*. at ¶¶ 45-47)

The false and misleading Animation is creating confusion and sowing doubt among gun owners, potential owners, and the wider firearms community. Indeed, several comments posted on YouTube by viewers of the Animation show that the false message is reaching consumers and causing harm. One commenter wrote, "*Should I stop carrying my P320?*" Garvey Aff. Ex. 3. Another wrote, "*This is very plausible and very well described video [sic] as to what could be the defective issue in Sigs firearms.*" *Id.* at Ex. 4. These comments indicate that viewers are

4

being misled into thinking that what is depicted in the Animation might be accurate, when in fact it is literally false.

In addition, Bagnell, or someone on his behalf, has been actively deleting particular comments. For example, one commenter wrote, "*I'm going to re-watch it now and look to see if I missed the firing pin safety block aspect.[3] Don't think I did. Did the earlier models not have one? And the later models do?*" *Id.* at Ex. 3. Another wrote, "*does this reflect the pre-upgrade or post-upgrade [fire control unit]?*" *Id.* at Ex. 4. In fact, Bagnell, or someone on his behalf, has deleted <u>all</u> comments that raise questions about the accuracy of the Animation, while leaving behind a few comments that seem to support the false message. *Id.* at ¶¶ 4-7.

## ARGUMENT

To obtain a preliminary injunction, a plaintiff must show that: (1) it is likely to succeed on the merits, (2) it will suffer irreparable injury if the injunction is not granted, (3) such injury outweighs any harm which granting injunctive relief would inflict on the defendant, and (4) that the public interest will not be adversely affected by granting the injunction. *See Camel Hair & Cashmere Inst. v. Associated Dry Goods Corp.*, 799 F.2d 6, 12 (1st Cir. 1986) (applying standard in case alleging false advertising under the Lanham Act and Massachusetts' consumer protection act); *see also Amatucci v. O'Brien*, 2016 U.S. Dist. LEXIS 153474, *13-14 (D.N.H. Oct. 19, 2016) (applying substantially identical standard in case alleging intentional torts and defamation).

The moving party's likelihood of success is the most important factor in the court's determination. *See Doe v. Trs. of Boston Coll.* 942 F.3d 527, 532 (2019); *see also Camel Hair &*

---

[3] Based on context, this reference to a "firing pin safety block" likely refers to the striker (i.e., firing pin) safety, a feature which has been present on the P320 since the firearm was first sold.

*Cashmere Inst.*, 799 F.2d at 16 ("[T]he district court's finding that it was probable that defendants' labels were literally false in itself warranted the grant of the injunction sought."). That is especially true in light of Congress' recent amendment of the Lanham Act to establish a *presumption of irreparable harm* where a plaintiff demonstrates likelihood of success on the merits. *See* 15 U.S.C. § 1116(a). Here, each factor—especially likelihood of success, the most important—weighs in favor of granting SIG's Motion for a Preliminary Injunction.

## I. SIG is likely to succeed on the merits.

SIG has brought three counts against defendants: (1) false advertising under the Lanham Act, (2) defamation, and (3) violation of the New Hampshire Consumer Protection Act ("CPA"). Although SIG need only show that it is likely to succeed on the merits of *one* of these counts, in fact SIG is likely to prevail on all three.

### a. Lanham Act Claim

The First Circuit has provided a clear roadmap of the elements a plaintiff must prove to prevail on a claim of false advertising under the Lanham Act. *Cashmere & Camel Hair Mfrs. Inst. v. Saks Fifth Ave.*, 284 F.3d 302, 310-311 (1st Cir. 2002). A plaintiff must prove that: (i) the defendant made a false or misleading description or representation of fact in a commercial advertisement about his own or another's product; (ii) the misrepresentation is material, *i.e.*, likely to influence the purchasing decision; (iii) the misrepresentation actually deceives or has the tendency to deceive a substantial segment of its audience; (iv) the defendant placed the false or misleading statement in interstate commerce; and (v) the plaintiff has been or is likely to be injured as a result of the misrepresentation, whether by a diversion of sales or a lessening of goodwill associated with its products. *Id.*, citing *Clorox Co. v. Proctor & Gamble Commer. Co.*, 228 F.3d 24, 33 n.5 (1st Cir. 2000). Here, the evidence easily satisfies each of the elements.

### i. *Commercial Advertising*

Courts apply a three-part test to determine whether a representation constitutes "commercial advertising or promotion" under the Lanham Act. They consider whether the representation: (a) constitutes commercial speech, (b) was made with the intent of influencing potential customers to purchase the speaker's goods or services, and (c) was disseminated to the consuming public in a way as to constitute "advertising" or "promotion." *See e.g., Grubbs v. Sheakley Group, Inc.*, 807 F.3d 785, 801 (6th Cir. 2015); *Podiatrist Ass'n v. La Cruz Azul de P.R., Inc.*, 332 F.3d 6, 19 (1st Cir. 2003); *Am. Bd. of Internal Med. V. Salas-Rushford*, 2021 U.S. Dist. LEXIS 12535 (D.P.R. Jan. 20. 2021). In *Lexmark Int'l Inc. v. Static Control Components*, 572 U.S. 118, 136 (2014), the Supreme Court held that a false advertising plaintiff need not establish that the parties are in direct competition with each other.

The Animation constitutes commercial advertising or promotion because it is presented to promote defendants' services as a lawyer and to attract potential clients. Although dressed up to look credible and scientific—with CT scans and high-tech graphics—the Animation is nothing more than an attempt by defendants to promote their law practice at SIG's expense. The fact that the Animation appears on the Bagnell Firm's website underscores that point. The website itself is clearly attorney advertising. *See* ABA Model Rules of Professional Conduct 7.2, Comment 1 (noting that attorney advertising rule permits dissemination of this type of information on an attorney's website).[4] It identifies "firearms product liability" as a key practice area. Garvey Aff. at ¶ 9. It includes client testimonials and endorsements. *Id.* It publicizes Bagnell's media

---

[4] Like New Hampshire, both Connecticut and Massachusetts (the two states where Bagnell is a member of the bar) adopted the ABA Model Rules. Comments to the Massachusetts rule state: "because it is not a communication directed to a specific recipient, a website or homepage would generally be considered advertising subject to this Rule." Mass. R. Prof. C. 7.2, Comment 3A.

appearances and press releases. *Id.* It contains contact information and a link to email Bagnell about potential representation. *Id.* It even discusses how Bagnell charges clients. *Id.* The fact that the Animation appears together with all these other indicia of advertising makes it clear that the Animation is itself commercial advertising that seeks to promote Bagnell's services.

    ii. *Falsity*

A Lanham Act plaintiff may establish falsity by demonstrating either that: (1) the advertisement is false on its face (i.e., "literally false"), or (2) the advertisement is literally true or ambiguous but nevertheless likely to mislead and confuse consumers. *See Clorox Co. v. Proctor & Gamble Commer. Co.*, 228 F.3d 24, 33 (1st Cir. 2000). A literally false claim can be made "either explicitly or by necessary implication." *Id*. at 35. An explicit literally false claim is one that make an unambiguous statement that is demonstrably incorrect. *See Camel Hair & Cashmere Inst. v. Associated Dry Goods Corp.*, 799 F.2d 6, 7, 15 (1st Cir. 1986) (holding that coat labels stating an inaccurate percentage of cashmere content were literally false). A false claim is conveyed by necessary implication when, "considering the advertisement in its entirety, the audience would recognize the claim as readily as if it had been explicitly stated." *Clorox Co.,* 228 F.3d at 35. Manipulated images of a product may constitute literally false advertisements. *See Aviva Sports, Inc. v. Fingerhut Direct Mktg.*, 829 F. Supp. 2d 802, 812 (D. Minn. 2011) (finding it reasonable to conclude that an advertisement image manipulated to misrepresent the size of an inflatable water slide was literally false). Where an advertisement is literally false, the court may grant relief without considering evidence of consumer reaction. *See United Indus. Corp. v. Clorox Co.*, 140 F.3d 1175, 1180 (8th Cir. 1998). Here, the evidence shows that the Animation contains numerous literally false representations—some explicitly false and others false by necessary implication.

From the outset, the Animation conveys the literally false message that the firearm depicted actually is the P320 firearm currently being offered for sale by SIG. Both the Bagnell Firm website and Bagnell's YouTube channel present the Animation alongside a conspicuous note in which Bagnell asserts a "2021" copyright. Garvey Aff. at ¶¶ 2-3. When an individual clicks on the animation, the opening frames specifically mention the "SIG Sauer P320". Garvey Aff. Ex. 7 at 0:00. The Animation then shows computer-generated animated images of what it claims is a SIG P320. *Id.* at 0:11. Considering the Animation in its entirety, a reasonable consumer would be led to believe that the P320 depicted is the actual SIG P320 firearm. But the P320 depicted in the Animation is <u>not</u> an accurate depiction of any SIG P320, *see* Miller Aff. at ¶¶ 12-47, much less the P320 currently being sold by SIG.

Focusing on the critical sear and striker components, the Animation falsely depicts malformed versions of the P320's sear notch and striker foot—depicting both as having a purported "rollover condition"—when the surfaces of both are actually flat with straight edges. *Miller Aff.* at ¶¶ 14-23. The Animation falsely depicts these components with deformed faces; the conditions purportedly shown are not the product of typical wear or manufacturing defects, and instead would have to be the product of digital manipulation. Miller Aff. at ¶¶ 15, 22. The Animation also falsely depicts the proportions of the striker foot and its engagement with the sear. *Id.* at ¶¶ 24-25.

Then, the Animation claims that the striker can walk vertically up off the sear. This representation is false and the Animation depicting it has been manipulated. It is impossible for the striker to walk up off the sear as depicted because the striker, striker housing, slide and frame rails are all held at rest biased in their upwardmost position, making it physically impossible for the striker to move upwards as depicted. Miller Aff. at ¶ 37. Such movement is only made

9

possible in the Animation by misrepresenting the positioning of these parts, by shrinking the size of some parts to increase the apparent "spaces" between them, and by manipulating the images so that solid parts (the slide and the frame rails) merge into each other and occupy the same space—a physical impossibility. Miller Aff. at ¶¶ 33-37.

In addition, the Animation misrepresents the height and geometry of the P320's striker safety notch and striker safety lock. Miller Aff. at ¶¶ 38-44. It depicts the safety notch as being only half its actual height, omitting both the back angle of the notch and the undercut at the bottom of the notch, and depicts the safety lock as having rounded edges and a "loose fit" against the striker. Miller Aff. at ¶ 43. This creates the false impression that the two parts could slip past each other, when in reality the geometry of the two parts has them lightly fitted and locked against each other.

Finally, the Animation depicts the P320 as having a single-notch sear, when the P320 has used a two-notch sear since 2017, and it completely omits the mechanical disconnector and the safety lever design used on the P320 since 2017. Miller Aff. at ¶¶ 45-47. These misrepresentations and omissions, individually and taken together, demonstrate that the Animation does not accurately depict any real SIG P320.

### iii. Materiality

The materiality element of a false advertising claim requires a plaintiff to prove that the defendant's deception is "likely to influence the purchasing decision." *Cashmere & Camel Hair Manuf. Inst. v. Saks Fifth Avenue*, 284 F.3d 302, 311-12 (1st Cir. 2002). One method of establishing materiality is to show that the false or misleading statements relate to an "inherent quality or characteristic" of the product. *Id.* (citing *NBA v. Motorola, Inc.*, 105 F.3d 841, 855 (2d Cir. 1997)). That is precisely the scenario here: the Animation makes numerous

misrepresentations about the internal components of SIG's P320—*i.e.*, "inherent characteristics" of the firearm—and it uses those false statements and misrepresentations in service of a message that would be material to any consumer: "*that there is a mechanism of failure that can make the gun fire without a trigger pull.*" On this record, there is no doubt that the misrepresentations of fact presented in the Animation are material.

    iv. Tendency to Deceive Consumers

A plaintiff need not introduce evidence of consumer deception if the advertisement contains literally false representations. *Cashmere & Camel Hair Manuf. Inst. v. Saks Fifth Avenue*, 284 F.3d 302, 311-12 (1st Cir. 2002). Thus, because the Animation is replete with literally false representations, SIG need not offer evidence of consumer deception. However, it is clear enough from the comments left by consumers on Bagnell's YouTube page that the Animation is deceptive—and it is clear from Bagnell's systematic deletion of comments that the deception is willful.[5]

For example, in a comment that Bagnell has since deleted, a self-identified SIG customer said: *"I'm going to re-watch it now and look to see if I missed the firing pin safety block aspect. Don't think I did. Did the earlier models not have one? And the later models do?"* Garvey Aff. Ex. 3. The customer then stated that *"if the early models had a firing pin block this video is misleading. Cause if all else fails it will stop the pin."* *Id.* These comments were subsequently deleted. *Id.* As discussed above, the P320 has all along had both a striker safety notch and safety

---

[5] To be clear, SIG is not required to prove that defendants acted willfully, but the fact that Bagnell has been deleting YouTube comments that question the accuracy of the Animation leaves no doubt as to defendants' state of mind.

lock (both misrepresented in the Animation).  In yet another comment that Bagnell has since deleted, a user wrote, *"does this reflect the pre-upgrade or post-upgrade FCU?"  Id.* at Ex. 4.

   v. Interstate Commerce

The Animation was published on the internet, which constitutes interstate commerce. *See, e.g. U.S. v. Horne*, 474 F.3d 1004, 1006 (7th Cir. 2007) (noting that a web site "is an avenue of interstate commerce"); *Healthport Corp. v. Tanita Corp. of Am.*, 563 F. Supp. 2d 1169, 1180 (D. Or. 2008) (statements made on website were advertisements in interstate commerce).

 **b.  State Law Claims**

Although SIG need only demonstrate likelihood of success on one claim, the evidence leaves no doubt that SIG is likely to succeed on the merits of *all* its claims, including its claims under state law.  The elements of a defamation claim are straightforward—defendants (1) published to a third party (2) a false and defamatory statement about the plaintiff, (3) where no valid privilege exists. *Pierson v. Hubbard*, 147 N.H. 760, 762-764 (N.H. 2002). A statement is defamatory when it would tend to lower the plaintiff "in the esteem of any substantial and respectable group." *Duchesnaye v. Munro Enters.*, 125 N.H. 244, 252 (N.H. 1984).

Here, SIG has clearly demonstrated a likelihood of success on its defamation claim. Defendants published the Animations on the internet, *i.e.*, to anyone with an internet connection and a computer, tablet, or smart phone. The Animations contain myriad false statements about SIG's product. These false statements are defamatory as they tend to disparage SIG's reputation and goodwill.  And defendants cannot credibly argue that any privilege applies.  Finally, the manipulation of the images in the video, the depiction of physically impossible conditions, and Bagnell's systematic deletion of certain YouTube comments, all discussed above, underscores that the false statements in the Animation were not merely "accidental," but that defendants are

willfully engaged in an effort to mislead. Thus, there is ample evidence that defendants failed to exercise reasonable care in ensuring that their statement (the Animation) was accurate.[6]

## II. Likelihood of irreparable harm.

To obtain a preliminary injunction, the moving party need only demonstrate a *likelihood* of injury[7] to reputation or goodwill, particularly where the moving party demonstrates that an advertisement is literally false. *See Camel Hair & Cashmere Inst. of Am., Inc. v. Associated Dry Goods Corp.*, 799 F.2d 6, 15 (1st Cir. 1986) ("only a slight likelihood of injury need be shown to warrant injunctive relief when the defendant's representations are literally false"). Here, the Animation's continued public availability threatens SIG's reputation and goodwill.

This evidence is more than sufficient for purposes of a preliminary injunction—particularly in light of Congress' recent amendment of the Lanham Act providing for a presumption of irreparable harm where a plaintiff shows a likelihood of success on the merits. *See* 15 U.S.C. § 1116(a) ("A plaintiff seeking any such injunction shall be entitled to a rebuttable presumption of irreparable harm … upon a finding of likelihood of success on the merits for a violation identified in this subsection in the case of a motion for a preliminary injunction or temporary restraining order."); *see also Quidel Corp. v. Siemens Med. Sols. USA, Inc.*, 2021 U.S.

---

[6] SIG has likewise demonstrated a likelihood of success on its New Hampshire CPA claim because defendants' conduct falls within an enumerated category of conduct that constitutes "unfair or deceptive" practices—i.e., "disparaging the goods, services, or business of another by false or misleading misrepresentation of fact." *See* RSA 358-A:2 (VIII); *see also Broadway North v. Tolson*, 2008 N.H. Super. LEXIS 9, *2 (N.H. Super. Ct. Belknap Cty. Sept. 16, 2008) ("As long as Respondent… was able to prove any one of the enumerated violations set forth in RSA 358-A:2, he has met his burden of proof with respect to a [CPA] violation").

[7] Irreparable harm is "a substantial injury that is not accurately measurable or adequately compensable by money damages." *Ross-Simons of Warwick v. Baccarat, Inc.*, 102 F.3d 12, 19 (1st Cir. 1996).

13

App. LEXIS 30144, *19, n.8 (9th Cir. Oct. 7, 2021) (post-amendment, holding that false advertising plaintiff can obtain injunctive relief without affirmative proof of irreparable harm).

Thus, it is defendants' burden to rebut the presumption of irreparable harm, and on these facts, defendants cannot do so. Defendants published the Animation knowing that it does not accurately depict any version of the P320, much less the version currently on the market. By intentionally fostering such confusion, defendants are sowing doubt among consumers and the firearms community, which risks irreparably harming SIG's brand, reputation, and goodwill. Moreover, a number of comments—many since deleted—demonstrate that irreparable harm is likely being experienced already. One user asked, *"Should I stop carrying my P320?"* Garvey Aff. at Ex. 3. And in a comment showing that the Animation has the potential to affect an entire line of SIG products, not just the P320, another asked: *"Was it only the P320 models specifically affected? Or the whole line that shares that FCU … like the M18 etc."* Id.

### III. The harm to SIG outweighs any harm that granting the requested injunction would inflict on defendants.

By contrast to the irreparable harm that will affect SIG if the Court does not issue an injunction, defendants will not suffer any significant harm if the Court does issue an injunction. Defendants may continue to advertise their services; they simply must refrain from publishing the false and misleading Animation as part of that effort.

### IV. The public interest will not be adversely affected, but rather would be served by granting the requested injunction.

It is in the public interest to remove false advertising from the marketplace. *See Annalee Mobilitee Dolls, Inc. v. Townsend Design Studios, Inc.*, 2003 U.S. Dist. LEXIS 22164, *45 (D. N.H. Dec. 9, 2003) (finding that the public interest would be served by enjoining the defendants from engaging in the allegedly misleading advertising). Thus, an order requiring defendants to

take down the Animation would not adversely affect the public interest. To the contrary, an order removing the false advertisement is affirmatively in the public interest.

## CONCLUSION

For the forgoing reasons, SIG Sauer respectfully requests that this court grant its motion for a preliminary injunction and order the Bagnell defendants to remove the Animation from the internet and to stop publishing the Animation on any platform or medium.

Dated: March 2, 2022

Respectfully submitted,
SIG Sauer, Inc.

By its attorneys,

*/s/ Colin J. Zick*
Colin J. Zick (N.H. Bar # 16529)
Foley Hoag LLP
155 Seaport Boulevard
Boston, Massachusetts 02210-2600
Telephone: 617-832-1000
Facsimile: 617-832-7000
czick@foleyhoag.com

Anthony D. Mirenda (*pro hac forthcoming*)
K. Neil Austin (*pro hac forthcoming*)
Stephen K. Garvey (*pro hac forthcoming*)
Foley Hoag LLP
155 Seaport Boulevard
Boston, Massachusetts 02210-2600
Telephone: 617-832-1000
Facsimile: 617-832-7000
amirenda@foleyhoag.com
naustin@foleyhoag.com
sgarvey@foleyhoag.com

## CERTIFICATE OF SERVICE

I, Colin J. Zick, hereby certify that on March 2, 2022 this document was filed through the ECF system and that I will cause it to be served on the defendants by process server via hand delivery at the following addresses:

>Jeffrey S. Bagnell
>55 Post Road West
>Westport, CT 06880
>
>and
>
>Jeffery S. Bagnell, Esq., LLC
>55 Post Road West
>Westport, CT 06880

*/s/ Colin J. Zick*
Colin J. Zick