UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

| | |
|---|---|
| SIG SAUER, INC.,<br><br>    *Plaintiff*,<br><br>v.<br><br>JEFFREY S. BAGNELL, ESQ., LLC, and JEFFREY S. BAGNELL,<br><br>    *Defendants*. | Civil Action No.: 1:22-cv-00078-LM |

**BRIEF OF *AMICI CURIAE* AMERICAN CIVIL LIBERTIES UNION AND AMERICAN CIVIL LIBERTIES UNION OF NEW HAMPSHIRE IN OPPOSITION TO PLAINTIFF'S
<u>MOTION FOR PRELIMINARY INJUNCTION</u>**

**INTERESTS OF PROPOSED *AMICI CURIAE***

The American Civil Liberties Union ("ACLU") is a nationwide, nonprofit, nonpartisan organization with approximately two million members and supporters dedicated to the principles of liberty and equality embodied in the Constitution and our nation's civil rights laws. Since its founding in 1920, the ACLU has frequently appeared before courts throughout the country in cases involving the exercise of First Amendment rights, both as direct counsel and as *amicus curiae*. *See, e.g.*, *Hague v. Comm. for Indus. Org.*, 307 U.S. 496 (1939); *Bartnicki v Vopper*, 532 U.S. 514 (2001); *Snyder v Phelps*, 562 U.S. 443 (2011); *Mahanoy Area Sch. Dist. v B. L.*, 141 S. Ct. 2038 (2021). The American Civil Liberties Union of New Hampshire (ACLU-NH) is the statewide affiliate of the ACLU and has more than nine thousand members and supporters across the state. Both the ACLU and the ACLU-NH have

1

long opposed prior restraints on speech, particularly speech on matters of public concern. The proper resolution of this case is therefore a matter of substantial interest to the ACLU, the ACLU-NH, and their members.

**INTRODUCTION**

Plaintiff SIG Sauer, Inc. ("SIG") seeks a preliminary injunction prohibiting Defendant Jeffrey S. Bagnell and his law firm (collectively, "Mr. Bagnell") from displaying an Animation that depicts alleged product defects in SIG's P320 semi-automatic pistol. SIG claims that the Animation includes material falsehoods and misrepresentations regarding the P320, in violation of the Lanham Act, 15 U.S.C. § 1125(a), New Hampshire's unfair competition law, RSA 358:A:1, I, and New Hampshire' common law defamation tort. Compl. at 15–16, ECF No. 1. *Amici* take no position on the merits of SIG's claims at this time, but respectfully submit that SIG's request for a preliminary injunction would amount to an impermissible prior restraint on speech addressing matters of public concern.

Prior restraints are anathema to the First Amendment, which was specifically designed to prevent the government from suppressing speech before it occurs. In particular, it is well established that courts cannot enjoin allegedly defamatory speech based on preliminary findings of falsity. At the preliminary injunction stage, the risk of unfounded judicial censorship is simply too great for the First Amendment to bear. SIG argues that its requested injunction does not implicate this aspect of the

2

bar on prior restraints because, according to SIG, Mr. Bagnell's display of the Animation constitutes commercial speech. Even if a less stringent prior restraint test applies to commercial speech, however, the values underlying the bar on prior restraints counsel strongly against SIG's requested preliminary injunction.

      First, SIG's requested preliminary injunction is not limited to commercial uses of the Animation; rather, SIG asks this Court to prohibit Mr. Bagnell "from publishing the Animation on any platform or medium." Mem. of Law in Support of Pl.'s Mot. for Prelim. Inj. at 15, ECF No. 3-1. SIG does not dispute that any injunction against Mr. Bagnell's non-commercial uses of the Animation would violate the bar on prior restraints. Second, although false or misleading commercial speech is unprotected by the First Amendment, SIG's preliminary injunction would restrain speech that has not been finally adjudicated to be false or misleading in any context. Granting a preliminary injunction under these circumstances would create the same intolerable risk of erroneous censorship as a preliminary injunction would against allegedly defamatory non-commercial speech. Finally, the threat of erroneous censorship weighs heavily here because SIG seeks to enjoin speech on an archetypal matter of public concern—alleged defects in a mass-produced firearm. The public has a compelling interest in timely access to information on this topic, which a preliminary injunction would irreparably obstruct.

In light of these considerations, *amici* respectfully urge the Court to deny SIG's motion for a preliminary injunction.[1]

## ARGUMENT

**I.    There is a strong First Amendment presumption against prior restraints.**

Prior restraints are "administrative and judicial orders *forbidding* certain communications when issued in advance of the time that such communications are to occur." *Alexander v United States*, 509 U.S. 544, 550 (1993); *accord Sindi v. El-Moslimany*, 896 F.3d 1, 31 (1st Cir. 2018). "Temporary restraining orders and permanent injunctions—*i.e.*, court orders that actually forbid speech activities—are classic examples of prior restraints." *Alexander*, 509 U.S. at 550. The First Amendment was designed "to create a bulwark" against these "previous restraints upon speech." *Sindi*, 896 F.3d at 32. Accordingly, prior restraints are considered "the most serious and the least tolerable infringement of First Amendment rights." *Neb. Press Ass'n v Stuart*, 427 U.S. 539, 559 (1976).

The Constitution's distrust of prior restraints is founded on "a theory deeply etched in our law: a free society prefers to punish the few who abuse rights of speech after they break the law than to throttle them and all others beforehand. It is always difficult to know in advance what an individual will say, and the line between

---

[1] *Amici* take no position on the propriety of permanent injunctive relief, which is not currently before this Court; however, *amici* respectfully submit that any request for permanent injunctive relief should be entertained, if at all, only after full discovery.

4

legitimate and illegitimate speech is often so finely drawn that the risks of freewheeling censorship are formidable." *Se. Promotions, Ltd. v. Conrad*, 420 U.S. 546, 559 (1975). The collateral bar rule—which requires that a judicial injunction be followed on pain of contempt until modified or vacated, even if it is unconstitutional—"compounds the grave perils posed by prior restraints." *Sindi*, 896 F.3d at 32. Whereas "[a] criminal penalty or a judgment in a defamation case is subject to the whole panoply of protections afforded by deferring impact of the judgment until all avenues of appellate review have been exhausted," a prior restraint "has an immediate and irreversible sanction" that effectively prevents publication while the order remains in effect. *Neb. Press*, 427 U.S. at 559. "If it can be said that a threat of criminal or civil sanctions after publication 'chills' speech, prior restraint 'freezes' it at least for the time," which is especially dangerous where the restraint applies to speech on matters of public concern. *Id.*

Such an extraordinary intrusion on free expression interests comes bearing "a 'heavy presumption' against its constitutional validity." *Org. for a Better Austin v Keefe*, 402 U.S. 415, 419 (1971); *accord Sindi*, 896 F.3d at 31. "The presumption against prior restraints is heavier—and the degree of protection broader—than that against limits on expression imposed by criminal penalties." *Se. Promotions*, 520 U.S. at 558–59. The Supreme Court has upheld prior restraints only in "exceptional cases," *Near v. Minnesota*, 283 U.S. 697, 716 (1931), when it furthers "the essential

5

needs of the public order," *Carroll v. President & Comm'rs of Princess Anne*, 393 U.S. 175, 183 (1968). "Even where questions of allegedly urgent national security, or competing constitutional interests, are concerned, [the Court has] imposed this 'most extraordinary remed[y]' only where the evil that would result from the reportage is both great and certain and cannot be mitigated by less intrusive measures." *CBS, Inc. v Davis*, 510 U.S. 1315, 1317 (1994) (Blackmun, J., in chambers) (alteration in original) (internal citations omitted).

For instance, in *New York Times Co. v. United States*, 403 U.S. 713 (1971), the Supreme Court held that the government's attempt to suppress the publication of the Pentagon Papers during the Vietnam War failed to satisfy this exceedingly demanding standard, notwithstanding the assertion by the United States that publication would cause grave and irreparable damage to the nation's security. The Court reached this conclusion "despite the fact that a majority of the Court believed that release of the documents, which were classified 'Top Secret-Sensitive' and which were obtained surreptitiously, would be harmful to the Nation and might even be prosecuted after publication as a violation of various espionage statutes." *Neb. Press Ass'n*, 427 U.S. at 591–92 (Brennan, J., concurring).

In *Sindi*, the First Circuit closely scrutinized whether the bar on prior restraints prohibited a court from issuing a permanent injunction prohibiting the defendant from publishing six statements that the court found, on the basis of evidence adduced

6

at trial, to be false and defamatory. *See* 896 F.3d at 27. The court held that the permanent injunction, which prohibited the defendant from publishing the proscribed statements, was "a paradigmatic example of a prior restraint" and therefore subject to strict scrutiny. *Id.* at 31. The plaintiff argued that the injunction "comport[ed] with the First Amendment because the six statements were previously employed to defame her and, thus, no longer constitute protected speech." *Id.* at 32. The First Circuit rejected this argument, reasoning that even if the challenged statements might constitute unprotected defamation in some contexts, they might be true or nondefamatory in other contexts. *See id.* at 33. By "fail[ing] to make any allowance for contextual variation," the permanent injunction impermissibly prohibited "speech about a public figure 'before an adequate determination that it is unprotected by the First Amendment.'" *Id.* at 33–34 (quoting *Pittsburgh Press Co. v. Pittsburgh Comm'n on Hum. Rels.*, 413 U.S. 376, 390 (1973)). As discussed below, the same reasoning weighs even more heavily against SIG's request for a preliminary injunction, which also threatens to restrain protected speech on matters of significant public concern.

## II. SIG's requested preliminary injunction against Mr. Bagnell's display of the Animation would amount to an impermissible prior restraint.

It is well-established that the bar on prior restraints prohibits courts from issuing preliminary injunctions that prohibit the defendant from publishing particular, allegedly defamatory statements. "Such specific preliminary injunctions

7

have been sharply condemned by most appellate courts that have seriously considered them—even by courts that authorize specific permanent injunctions—because those injunctions suppress speech without a finding on the merits that the speech is unprotected." Eugene Volokh, *Anti-Libel Injunctions*, 168 U. Pa. L. Rev. 73, 94–95 (2019) (collecting cases). "The problem with the specific preliminary injunction . . . is that it doesn't just lead to punishment of speech that a jury has found libelous . . . . It leads to punishment of speech that a judge has found will likely be shown to be libelous, and this finding may have been based on a highly abbreviated (and sometimes even ex parte) adjudicative process." *Id.* at 96.

SIG maintains that its requested preliminary injunction does not raise First Amendment concerns, because it would restrict only commercial speech. SIG cites dicta from the First Circuit and the Supreme Court suggesting that "commercial speech *may* not be subject to [the] prohibition against prior restraints." *In re San Juan Star Co.*, 662 F.2d 108, 115 (1st Cir. 1981) (emphasis added) (citing *Va. Pharmacy Bd. v. Va. Consumer Council*, 425 U.S. 748, 771 & 772 n.24 (1976)). In *Pittsburgh Press*, on the other hand, the Supreme Court suggested that the prior restraint doctrine has at least some force even in the commercial speech context. *See* 413 U.S. at 390 (holding that the defendant's publication of discriminatory advertisements was unprotected commercial speech) ("[B]ecause no interim relief was granted, the order [enjoining the advertisements] will have not gone into effect

8

before our final determination that the actions of Pittsburgh Press were unprotected.").

The First Circuit has not resolved whether the traditional prior restraint analysis applies to preliminary injunctions against commercial speech. *Cf. Van Wagner Boston, LLC v. Davey*, 770 F.3d 33, 41 (1st Cir. 2014) (noting the Commonwealth of Massachusetts' argument that traditional prior restraint principles may not apply to commercial speech, but declining to address the issue). Assuming for the sake of argument that a less stringent prior restraint standard applies to commercial speech, SIG's requested preliminary injunction would still be inappropriate.

A. **SIG's requested injunction is not limited to commercial speech.**

The "core notion of commercial speech [is] 'speech which does no more than propose a commercial transaction.'" *Bolger v. Youngs Drug Prods. Corp.*, 463 U.S. 60, 66 (1983) (quoting *Virginia State Bd. of Pharmacy*, 425 U.S. at 762). However, some messages that do not merely propose a commercial transaction may still qualify as commercial speech. *See id.* at 66–67 (holding that the defendant's informational pamphlets constituted commercial speech). *Bolger* identified three factors to assist the proper classification in close cases: (1) whether the speech is an advertisement; (2) whether the speech refers to a specific product or service; (3) whether the speaker has an economic motivation for the speech. *See id.* "The

9

combination of *all* these characteristics," while not strictly essential, "provides strong support for the . . . conclusion that [speech is] properly characterized as commercial speech." *Id.* at 67.[2]

SIG does not assert that the Animation itself does nothing more than propose a commercial transaction; the Animation therefore does not fall within the core definition of commercial speech. Nor do the *Bolger* factors weigh unequivocally in SIG's favor. Even if this Court were to conclude that Animation was motivated by economic self-interest, and that if referred to a specific product, the fact remains that the Animation is not a promotional advertisement for Mr. Bagnell's services. *Ariix, LLC v. NutriSearch Corp.*, 985 F.3d 1107, 1116 (9th Cir. 2021) ("First, neither side materially disputes that the Guide is not in the traditional form of an advertisement— for example, there is no price or availability information listed."); *Hunter v. Va. State Bar ex rel. Third Dist. Comm.*, 744 S.E.2d 611, 617 (Va. 2013) (holding that an attorney's blog posts were "an advertisement in that they predominately describe cases where he has received a favorable result for his client").

The Animation is more akin to a product review like those contained in *Consumer Reports*, which are not treated as commercial speech. "Just like a

---

[2] In borderline cases, determining whether the speech at issue constitutes commercial speech may be difficult in the absence of a fully developed record. *See, e.g.*, *Greater Balt. Ctr. for Pregnancy Concerns, Inc. v. Mayor & City Council of Balt.*, 721 F.3d 264, 284–85 (4th Cir. 2013).

restaurant review does not propose a transaction between the individual reader and the restaurant, the [Animation] do[es] not propose any [commercial] transaction. Courts have held that such impersonal information is not commercial speech." *Commodity Trend Serv., Inc. v. Commodity Futures Trading Comm'n*, 149 F.3d 679, 686 (7th Cir. 1998) (holding that a financial publisher's informal investment advice about commodities trading did not constitute commercial speech (collecting cases)); *cf. also Bose Corp. v. Consumers Union of United States, Inc.*, 466 U.S. 485 (1984) (applying full First Amendment protection, in a commercial disparagement case, to a *Consumer Reports* review of a loudspeaker system).

SIG argues that "a context-specific analysis shows that the Animation is commercial speech," because "the Animation was featured prominently on Defendants' website, along with statements touting Mr. Bagnell's experience in litigating against SIG and providing potential clients with contact information." Pl.'s Reply in Support of a Prelim. Inj. at 11, ECF No. 23. Mr. Bagnell's decision to post the Animation on his professional website, which also contains traditional commercial messages, is not sufficient to convert the Animation itself into a commercial message. By the same token, the "community information and phone listings" in the yellow pages are not commercial speech merely because they happen to be placed alongside "a wide array of advertisements." *Dex Media West, Inc. v.*

*City of Seattle*, 696 F.3d 952, 959 (9th Cir. 2012). Instead, each display of the Animation must be considered separately in the context in which it takes place.

*Amici* take no position on whether the specific display of the Animation on Mr. Bagnell's website constitutes commercial speech. *Compare* State Bar of Cal. Standing Comm. on Professional Responsibility & Conduct, Formal Op. No. 2016-196 (advising that blog posts on an attorney's professional website will be subject to the same attorney advertising regulations as the rest of the website) *with Hunter*, 744 S.E.2d 617–18 (holding that an attorney's blog on his law firm's website was commercial speech, largely because the vast majority of the attorney's blog posts were *themselves* "self-promotional").[3]

Mr. Bagnell's display of the Animation on YouTube, however, is plainly noncommercial. *See* Garvey Aff., Ex. 3 at 2, ECF No. 3-7. Even if this Court were to conclude that Mr. Bagnell had some economic incentive to post YouTube videos related to his practice "in order to enhance his reputation in the field and increase his business," these videos are nonetheless "informational expressions of [his] knowledge and opinions." State Bar of Cal. Standing Comm. on Professional Responsibility & Conduct, Formal Op. No. 2016-196. Such communications "are not offers or messages concerning [his] availability for professional employment;

---

[3] Although Mr. Bagnell's website promotes his services, the webpage displaying the Animation did not include any promotional information. Garvey Aff., Ex. 1 at 2, ECF No. 3-6.

they do not invite readers to employ [his] services; and they do not specifically describe the services that [he] offers." *Id.* Mr. Bagnell's YouTube posts therefore do not qualify as commercial speech, even if they "include[] a hyperlink to his professional web page." *Id*.

SIG's requested preliminary injunction, which would prohibit Mr. Bagnell from posting the Animation on any platform or medium, would undoubtedly constitute an impermissible prior restraint on Mr. Bagnell's YouTube posts and any other non-commercial uses of the Animation. *See Osmose, Inc. v. Viance, LLC*, 612 F.3d 1298, 1323 (11th Cir. 2010) (holding, in the context of a Lanham Act claim for false disparagement against a commercial competitor, that injunctive relief must "be limited to statements made in commercial advertising and promotion"). At the very least, then, SIG's requested preliminary injunction is overbroad insofar as it would restrain Mr. Bagnell's non-commercial uses of the Animation.

**B. The public's interest in receiving information about alleged defects in the SIG P320 also militates against SIG's requested preliminary injunction.**

Even if the Court were to conclude that some of Mr. Bagnell's uses of the Animation constituted commercial speech, there are compelling reasons to reject SIG's request for a preliminary injunction with respect to any such commercial uses. *Cf. N.Y. Magazine v. Metro. Transp. Auth.*, 136 F.3d 123, 131 (2d Cir. 1998) ("Although the Supreme Court has indicated that commercial speech may qualify as

13

one of the exceptions to the bar on prior restraints, we see no reason why the requirement of procedural safeguards should be relaxed whether speech is commercial or not." (citation omitted)); *accord Desert Outdoor Advert., Inc. v. City of Moreno Valley*, 103 F.3d 814, 818–19 (9th Cir.1996); *In re Search of Kitty's East*, 905 F.2d 1367, 1371–72 & n.4 (10th Cir.1990).

First, "[e]ven if the Court were permitted to enjoin purely commercial speech upon a showing that it was false, no such showing has been made in this case." *New.Net, Inc. v. Lavasoft*, 356 F. Supp. 2d 1071, 1084 (C.D. Cal. 2003) (holding that falsity had not been clearly established where the defendant took no position on the veracity of the challenged statement). The parties hotly contest whether the Animation is materially false or misleading, citing the written testimony of dueling experts. *Compare* Mem. of Law in Support of Pl.'s Mot. for Prelim. Inj. at 8–12, ECF No. 3-1 (arguing that the Animation is materially false and misleading) *with* Defs.' Opp'n to Pl.'s Mot. for Prelim. Inj. at 5–9, ECF No. 22 (arguing that it is not). The factual questions here are complex and not easily susceptible to preliminary resolution. Under these circumstances, there is a significant risk that any predictions about the merits of SIG's claims may turn out to be inaccurate. Such risks are inherent in the preliminary injunction analysis, but a judicial order restraining speech based on an inaccurate prediction of falsity raises grave constitutional concerns, even when the speech at issue is commercial in nature.

Truthful, non-misleading commercial speech about lawful goods and services enjoys qualified First Amendment protection because it "assists consumers and furthers the societal interest in the fullest possible dissemination of information." *Cent. Hudson Gas & Elec. Corp. v. Pub. Serv. Comm'n of N.Y.*, 447 U.S. 557, 561–62. (1980). The suppression of protected commercial speech based on an incorrect preliminary assessment of its accuracy would undermine the public's First Amendment interest in accessing this information. *Cf. 44 Liquormart, Inc. v. Rhode Island*, 517 U.S. 484, 501 (1996) ("[W]hen a State entirely prohibits the dissemination of truthful, nonmisleading commercial messages for reasons unrelated to the preservation of a fair bargaining process, there is far less reason to depart from the rigorous review that the First Amendment generally demands."). Nor is the risk of erroneous censorship negligible. As noted above, "[t]he special vice of a prior restraint is that communication will be suppressed . . . before an adequate determination that it is unprotected by the First Amendment." *Pittsburgh Press Co.*, 413 U.S. at 390.

For this reason, courts often refuse to issue preliminary injunctions against allegedly false commercial speech where the speech's falsity has not been clearly established. For example, in *J.K. Harris & Co. v. Kassel*, 253 F. Supp. 2d 1120 (N.D. Cal. 2003), a tax representation and negotiation company obtained a preliminary injunction prohibiting a competitor from publishing allegedly false criticisms of the

company on the competitor's website. *Id.* at 1122. On a motion for reconsideration, however, the court narrowed its preliminary injunction to exclude any statements that the competitor "declared, based on personal knowledge, to be factually accurate"—even though the plaintiff "show[ed] a serious question going to the merits of whether Defendants have violated section 43 of the Lanham Act by publishing false representations of fact misleading to the public"—because "enjoining these statements prior to an adjudication of their truth or falsity would suppress arguably protected speech." *Id.* at 1129. *See also, e.g.*, *Exeltis USA Inc. v. First Databank, Inc.*, No. 17-CV-04810-HSG, 2017 WL 6539909, at *4 (N.D. Cal. Dec. 21, 2017) ("Even assuming that Defendant's database is commercial speech . . . the Court finds no persuasive justification for not applying the general presumption against prior restraints, where there has not yet been any determination on the merits that the speech is in fact false or misleading, and falsity is the key issue in dispute. To do so would risk erroneously enjoining truthful, protected speech on the basis of an incomplete record.").

The dangers of suppression are compounded in this case because the Animation addresses allegations of potentially lethal defects in a mass-produced firearm—a paradigmatic issue of public concern. *See, e.g.*, *Dairy Stores, Inc. v. Sentinel Pub. Co.*, 516 A.2d 220, 230 (N.J. 1986) ("Widespread effects of a product are yet another indicator that statements about the product are in the public interest."

(collecting cases)). There has also been a significant amount of public interest in this issue, as demonstrated by coverage in major media outlets like Good Morning America, Nightline, and CNN. Bagnell Aff. at ¶¶ 5–6, ECF No. 22-1. A judicial order prohibiting Mr. Bagnell from displaying the Animation would obstruct the public's access to information about this important topic. Even standing alone, that consideration weighs heavily against SIG's requested preliminary injunction. *See New.Net*, 356 F. Supp. 2d at 1073 ("The Court concludes that, whether or not the speech is viewed as less-protected 'commercial speech,' it falls within the scope of First Amendment protections because it addresses a matter of public interest. Under these circumstances, the Court's ruling in this preliminary proceeding may not turn on whether the statements in dispute are true or false . . . ."). Taken together with the inconclusive evidentiary record at this stage of the proceedings, the need to maintain sufficient breathing space for "uninhibited, robust, and wide-open" public discussion is dispositive. *N.Y. Times Co. v. Sullivan*, 376 U.S. 254, 270 (1964).

## CONCLUSION

SIG's requested preliminary injunction is a classic prior restraint. It asks this Court to suppress specific speech on a matter of public concern on the basis of unadjudicated allegations of falsity. *Amici* respectfully urge the Court to deny SIG's motion for preliminary injunction.

Dated: May 26, 2022

Respectfully submitted,

*/s/ Gilles R. Bissonnette*
Gilles R. Bissonnette (N.H. Bar. No. 265393)
Henry R. Klementowicz (N.H. Bar No. 21177)
AMERICAN CIVIL LIBERTIES
   UNION OF NEW HAMPSHIRE
18 Low Avenue
Concord, NH 03301
Tel.: 603.224.5591
gilles@aclu-nh.org

Brian Hauss (*pro hac vice* pending)
Laura Moraff (*pro hac vice* pending)
AMERICAN CIVIL LIBERTIES
   UNION FOUNDATION
125 Broad Street, Floor 18
New York, NY 10004
Tel.: 212.549.5000
bhauss@aclu.org
lmoraff@aclu.org

*Attorneys for* Amici Curiae *American Civil Liberties Union and American Civil Liberties Union of New Hampshire.*

## CERTIFICATE OF SERVICE

The undersigned certifies that he has electronically filed on this date the foregoing pleading with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all counsel of record. This filing is available for viewing and download from the ECF system.

Dated: May 26, 2022                                                Respectfully submitted,

                                                                                            */s/ Gilles R. Bissonnette*
                                                                                             Gilles R. Bissonnette